**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOHN P. MELCHIOR<br>101 Azalea Ct.<br>Milford, PA 18337<br><br>　　　　Plaintiff,<br><br>v.<br><br>WOODLOCH PINES, INC.<br>731 Welcome Lake Rd.<br>Hawley, PA 18428<br><br>　　　　Defendant. | CIVIL ACTION<br><br>No.:<br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Plaintiff, John P. Melchior (hereinafter referred to as "Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

### I. Introduction

1. Plaintiff has initiated this action to redress violations by Woodloch Pines, Inc. of the Age Discrimination in Employment Act ("ADEA" - 29 U.S.C. §§ 621 *et. seq.*) and the Pennsylvania Human Relations Act ("PHRA" - 43 P.S. Section 951, *et. seq*). Plaintiff was discriminated against, refused hours, not recalled and was unlawfully terminated by Defendant because of his advanced age, causing him to suffer damages – as set forth *infra*.

### II. Jurisdiction and Venue

2. This Court may properly maintain jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice,

satisfying the standard set forth by the United States Supreme Court in *International Shoe Co v. State of Washington*, 326 U.S. 310 (1945) and its progeny.

3. This action is initiated pursuant to federal law. The United States District Court for the Middle District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

4. Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendant resides in and/or conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff is proceeding herein under ADEA and has properly exhausted his administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC. Plaintiff also exhausted his administrative remedies (with respect to his PHRA claims) because he timely filed Charges with the Pennsylvania Human Relations Commission ("PHRC") and the charges have remained with the PHRC for over one year.

### III.     Parties

6. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

7. Plaintiff is an adult who resides at the above-captioned address.

8. Defendant Woodloch Pines, Inc. (hereinafter referred to as "Defendant") is an all-inclusive family resort located in Hawley, PA

9. At all times relevant herein, Defendant acted through by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

### IV.     Factual Background

10. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

11. Plaintiff is an 81-year-old male.

12. Plaintiff was hired to work for Defendant on or about January 1, 2019.

13. At all times during his employment with Defendant, Plaintiff worked as a bus driver, specifically driving Bus #3.

14. Bus #3 was a 13-passenger bus that did not require a CDL to drive.

15. Throughout his entire employment with Defendant, Plaintiff was the oldest driver in his department.

16. As a result of the COVID-19 pandemic, Defendant was forced to temporarily close to the public in or about March of 2020, and Plaintiff was placed out of work for a period of time.

17. In or about June of 2020, Defendant began to recall employees as it opened back open to the public; however, Plaintiff was not given any hours until the end of June, 2020.

18. Plaintiff was scheduled to work three weeks starting in at the end of June, 2020 – driving approximately three days per week (a reduction in what he was normally scheduled to work pre-COVID-19 pandemic).

19. Plaintiff reported to work without issue until on or about July 9, 2020, when he was informed by David Bates (Plaintiff's Supervisor – hereinafter referred to as "Bates" – mid 30s) that he did not need to run Bus #3 the next scheduled day or the next week because the guest count was low and therefore, Plaintiff did not have to report to work the next day or for the third week that he had been scheduled (discussed *supra*).

20. Bates further informed Plaintiff to check the weekly schedule to see what days in the future he would be scheduled.

21. Plaintiff waited months to hear from Bates or someone at Defendant regarding when his next scheduled shift would be and continuously checked the weekly schedules as directed by Bates; however, he was not provided with any shifts for the rest of 2020.

22. Instead, upon information and belief, Defendant assigned another driver to drive Bus #3 instead of assigning Plaintiff these shifts.

23. The other driver who Defendant assigned to drive Bus #3 instead of Plaintiff was Robert Tribus (hereinafter "Tribus"). Tribus was, upon information and belief, 20+ years younger than Plaintiff and had less seniority than Plaintiff.

24. In addition to assigning Tribus to drive Bus #3 instead of Plaintiff (despite the fact that Bus #3 was typically assigned to Plaintiff prior to the COVID-19 pandemic), Defendant also offered other non-driving work to Tribus, such as painting picnic tables and picking up trash on the side of the road. This work was never offered to Plaintiff so that he could pick up additional hours (like Tribus).

25. In or about the end of July/beginning of August, 2020 – Plaintiff received notice from Defendant that his medical benefits were being canceled and that he would have the option to select COBRA. While being placed out of work due to COVID-19, Plaintiff was given the

option to pay his portion of the insurance premiums to keep his medical benefits intact. Therefore, Plaintiff was confused when he received this letter and called Schreiber to further discuss.

26. When Plaintiff spoke to Schreiber about the aforesaid COBRA letter, he asked why his benefits had been cancelled, to which Schreiber replied that his employment status was changed to "seasonal employee."

27. Plaintiff asked Schreiber what "seasonal" meant and Schrieber stated that she would have to call someone by the name of Melissa (last name unknown – position unknown) to further inquire about Plaintiff's question. Schreiber then followed up with Plaintiff and told him that that seasonal employment meant "you are no longer available to work."

28. Plaintiff explained that he never informed anyone that he was not available for work and that he wanted very much to continue working. Schreiber then informed Plaintiff that "Dave Bates gave that reason to HR."

29. On August 9, 2020, Plaintiff wrote a letter to Defendant's HR department requesting that Defendant remove his "seasonal" employment status (as he was able and available to work) and that Defendant provide him with a letter stating the same.

30. Despite following up on this letter and his request therein, Schreiber, nor anyone else at Defendant ever responded to Plaintiff.

31. After not receiving any shifts between July 9, 2020 and November of 2020, Plaintiff filed a complaint of discrimination with the PHRC – which was dual filed with the EEOC, asserting that he was denied hours and not recalled to work because of his advanced age.

32. Upon information and belief, Tribus continued to receive shifts throughout 2020 and specifically shifts driving Bus #3.

33.     On or about February 8, 2021, Plaintiff received Defendant's Answer with New Matter, which was sent to the PHRC in response to his aforesaid complaint of discrimination.

34.     Within Defendant's aforesaid Answer and New Matter, Defendants, ***for the first time***, alleged that it terminated Plaintiff on November 2, 2020.

35.     Prior to his receipt of Defendant's Answer and New Matter, Plaintiff had never been told by anyone at Defendant that he had been terminated and Defendant never sent him a termination letter.

36.     Defendant claimed that Plaintiff was terminated from his employment with Defendant on November 2, 2020 (allegedly) because Bates called Plaintiff several times in October of 2020 to ask him to return to work and Plaintiff never responded.

37.     The aforesaid reasoning offered for Plaintiff's termination by Defendant is completely pretextual and false. Plaintiff never received any phone calls or voice messages from Bates or anyone else at Defendant in October (or any other month following his last physical day of work on July 9, 2020) asking him to return to work.

38.     Furthermore, even though Bates told Plaintiff on July 9, 2020 to look at the weekly schedules in order to determine his next scheduled shift, Bates never put his name on the schedule.

39.     After discovering that he had actually been terminated by Defendant allegedly on November 2, 2020, Plaintiff filed another complaint of discrimination with the PHRC (which was dual filed with the EEOC) asserting that he was wrongfully terminated because of his advanced age.

40. Plaintiff believes and therefore avers that Defendant reduced his hours, failed to schedule him past July 9, 2020/failed to recall him after July of 2020, and ultimately terminated his employment because of his advanced age.

## Count I
## Violations of the Age Discrimination in Employment Act ("ADEA")
### (Age Discrimination)

41. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

42. Plaintiff believes and therefore avers that Defendant reduced his hours, failed to schedule him past July 9, 2020/failed to recall him after July of 2020, and ultimately terminated his employment because of his advanced age.

43. These actions as aforesaid constitute unlawful retaliation under the ADEA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendants is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay increases, bonuses, medical and other benefits, training, promotions, pension, and seniority.  Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/interference at the hands of Defendant until the date of verdict;

C. Plaintiff is to be awarded liquidated, as permitted by applicable law, in an amount determined by the Court or trier of fact to be unappropriate to punish Defendant for its willful,

7

deliberate, malicious and outrageous conduct and to deter Defendants or other employers from engaging in such misconduct in the future;

  D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate;

  E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

  F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to the Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

  G. Plaintiff's claims are to receive trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

           Respectfully submitted,

           **KARPF, KARPF & CERUTTI, P.C.**

By: _____
           Ari R. Karpf, Esq.
           3331 Street Road
           Two Greenwood Square, Suite 128
           Bensalem, PA 19020
           (215) 639-0801

Dated: August 29, 2022